AUGUST KOPP et al., Appellants, v. WILLIAM BRIGGS et al., Appellees.

**BILLS AND NOTES:** Duress—Evidence. Evidence bearing on the
1   issue whether notes had been executed under threats to criminally
    prosecute the son of the maker for defalcation reviewed, and held
    insufficient to establish duress.

**CONTRACTS:** Consideration—Sufficiency. Notes and mortgages exe-
2   cuted by a stockholder in a bank to cover an embezzlement by his
    son of the bank's funds and to preserve the integrity of the bank
    are supported by a sufficient consideration.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

OCTOBER 24, 1924.

ACTION in equity, for the cancellation of certain notes and mortgages executed by August and Elizabeth Kopp, plaintiffs herein, to William Briggs. Decree dismissing the petition, and plaintiffs appeal.—*Affirmed.*

*Molyneux, Maher & Meloy,* for appellants.

*T. E. Diamond,* for appellees.

STEVENS, J.—This is an action in equity, for the cancellation of three promissory notes for $25,000 each, bearing date May 31, 1922, signed by appellants, and payable to William
Briggs five years after date, together with three
1. BILLS AND
NOTES: duress: mortgages, covering separate and distinct tracts
evidence. of land in O'Brien County, executed to secure
the payment of said notes. The grounds upon which cancellation of the above instruments is sought are fraud, undue influence, and duress in their execution, and want of adequate consideration; the last two,—that is, duress and want of consideration,—being the grounds principally relied upon by appellants.

The immediate situation out of which the transaction complained of arose, was the discovery by an officer of the Primghar

Savings Bank, one of the appellees herein, on May 24, 1922, that the bank was apparently insolvent and wholly without funds to meet outstanding drafts and an anticipated withdrawal by O'Brien County of $40,000 of its deposits.

A brief narrative of a few of the conceded facts will help to an understanding of the matters in controversy. William Briggs, the payee named in the three notes, was, for many years prior to January, 1922, the president and active manager of the bank. John Archer, a cousin of Briggs', W. W. Arthurholt, R. J. Locke, M. S. Metcalf, August Kopp, and Charles Kopp, were, at the time the notes and mortgages were executed, stockholders and officers of the bank, or had been, prior to 1922. Briggs closed out all financial interest in the bank in January, and retired from the presidency and management of the bank. Charles Kopp entered the bank as an employee several years prior to January, 1918, when he became its cashier. Prior to January, 1922, the Kopps had secured a controlling interest in the bank, and Charles appears to have assumed virtual management thereof. Prior to the transaction complained of, the relationship of the parties was friendly, and August Kopp had been for twenty years a customer at the bank. August Kopp came to this country from Germany when a young man, with little education, and, by economy and industry, acquired the title to 960 acres of land in O'Brien County, subject only to a mortgage of $39,000. Charles Kopp, the son of appellants, withdrew funds from the bank for his personal use, until his indebtedness to it reached $43,000. The bank had also accumulated bad paper to approximately an equal amount, so that its capital of $30,000 and its surplus of $20,000 or $25,000, possessed by the bank in January, had been entirely wiped out prior to May 24, 1922. Confronted with the condition of the bank, the cashier admitted the defalcation, and united with the other officers in an effort to effect its rehabilitation. As soon as Archer discovered the apparently insolvent condition of the bank, he sent for Briggs, and, in a short time, the other parties named were called into consultation with them. Upon being apprised of the situation, and realizing that, unless something was speedily done, the bank would be compelled to suspend business, the appellants executed

three notes and mortgages for identical amounts with those in controversy, and turned them over to Briggs, with a stipulation not here involved. The following day, Briggs, Archer, and Metcalf borrowed $60,000, $30,000 of which was wired to the bank's correspondent in Chicago. Briggs, as stated, at this time had no financial interest in the bank. Funds sufficient to continue business having been provided, the readjustment of the bank's affairs was taken up by all of the parties concerned. A few days later, George A. Heald, an attorney at Spencer, Iowa, was employed, and thereafter assisted in arranging the settlement finally consummated. Some claim is asserted by appellants that Heald was employed by the bank; but we are satisfied that he was employed by Charles Kopp, and that he represented him and his father in the negotiations. He so testified, and R. J. Locke further testified that he advised August Kopp to secure the services of an attorney, suggesting Heald, with others. The circumstance relied upon to show that Heald represented the bank was that he insisted, after the settlement, that the bank should pay his fees, which the officers promised to do.

It is the contention of appellants that they were intimidated by the threats of Archer, Locke, and others to prosecute Charles for embezzling the bank's funds, and perhaps August for fraudulent banking, and were thereby induced to execute the papers. This contention presents the principal question for discussion. The notes and mortgages executed on May 24th were later surrendered to appellants, and the instruments now in suit executed, as already stated, on May 31st, to take the place of the prior ones. At this time, August and Charles Kopp owned 250 of the 300 shares of the capital stock of the bank. All of this stock was assigned to Briggs on the day the notes and mortgages were executed. At this time, Charles Kopp owed the bank $43,000, and August Kopp was indebted to it on a note of $10,000, and jointly with his brother John, his son Charles, and R. J. Locke, on another note of $10,000. He also owed Archer $10,000, Briggs $3,000, and a bank in Chicago $20,000. The bank also held a note of $6,000, signed by John Kopp. All of these items entered into the consideration of the notes in controversy. In addition to the above items, it was figured that August Kopp

should make good the losses on bad paper to the extent of $16,000, and three other notes amounting to $10,500 were figured in the settlement; but these notes were turned over by the bank. A credit of $41,000 was allowed in the settlement for the stock.

August Kopp testified that he was urged and threatened by the other parties named, until he was forced to yield and to execute the papers. His wife testified that R. J. Locke threatened the prosecution of Charles at the time she signed the notes, and that, but for these and other threats, she would not have done so. The testimony of appellants as to what occurred at the home when Mrs. Kopp signed the papers is corroborated by the testimony of their daughter Edna. All of the other persons named, except Charles Kopp, were witnesses for appellees, and emphatically denied that threats of any kind were made, and asserted that the instruments were executed by appellants in good faith, and for the express purpose of securing the August and John Kopp notes, and to cover the defalcations of the cashier and a portion of the losses represented by the depreciation in the bank's assets. The bank was being taken over by Briggs and the other parties named, and a full settlement was had of all items for which any of the Kopps were indebted to it. Heald testified that he consulted fully with August Kopp, as well as with the other parties concerned, went into the details of the bank's condition, and advised him to execute the papers; that he did so voluntarily; and that no fraud or duress was practiced upon him in any form. Locke, in his testimony, admitted that he and others became considerably excited and worked up when the condition of the bank was first discovered, and that he did insist that something be done at once, or that the doors of the bank would have to be closed. He called attention to the fact that deposits were being unlawfully received, and that prosecution for fraudulent banking was possible. Heald further testified that a statement showing the exact terms of the settlement was prepared by Charles Kopp and fully explained to August. This statement, identified as Exhibit 3, in the form of a photograph, appears in the abstract. Heald also called the attention of August Kopp to his own indebtedness to the bank, the losses on account of bad paper, and the further liability which would

result from an assessment on the stock if the bank went into the hands of a receiver, and figured up an indebtedness to the bank which, including the $6,000 note given by John Kopp which he said August wanted included, amounted to $59,000. By the settlement, all of this indebtedness to the bank, together with that of Charles, was wiped out. The stock which was assigned to Briggs was worthless, except for such value as it might have had in the good will of the business.

No claim is asserted by August Kopp that any officer of the bank misrepresented the true condition of its affairs to him, or that he was in any way misled as to the extent of his personal liability. He knew that he was not legally liable for the debts owed to the bank by Charles, or for the amount unlawfully appropriated by him; and, in his testimony, claims only that, when he was weakened by the worry and distress of the revelations made to him as to the bank's affairs and his son's part therein, he was intimidated by the persistent threats of all of the parties to the prosecution, and that, but for these threats, neither he nor his wife would have signed the papers. The persuasive arguments which the witnesses admitted were made to Kopp were that he was under obligations to the creditors of the bank, who had dealt with it in good faith, and that it was his duty, so far as possible, to protect them and to prevent the unfortunate consequences that would result from placing the affairs of the bank in the hands of a receiver. These matters constituted neither fraud nor duress. It may be, as asserted by counsel, that the Kopps paid too much for the bank stock when they purchased it, and it is admitted that some of the bad paper held by the bank was acquired when Briggs was its president and manager. While these matters may, to some extent, aggravate the situation, they have no great bearing upon the charge that the notes and mortgages were obtained by fraud or duress. The blow, when it fell upon appellants, was indeed a severe one, and it may result, as counsel contends, in the ultimate loss of their accumulations; but this, regrettable as it is, affords no justification for setting aside the instruments voluntarily executed under the circumstances shown, and upon the advice of a competent lawyer, with a full understanding of the facts.

The greater weight of the evidence sustains the decree of the court below. We do not mean that the testimony of August Kopp is wholly unsupported by circumstances or by other testimony; but, when the record is viewed as a whole, it does not sustain his contention. Nothing will be gained by a detailed recital of the evidence. Equity in cases where duress is charged, follows the law which, on the points involved, is entirely familiar. If the threats charged were established by the evidence, a good ground for setting aside the instruments would be made out. *Wilson v. Calhoun,* 170 Iowa 111.

We need not discuss the subject of a want of consideration. A consideration clearly appears from the foregoing recital of the facts. There were no inequitable circumstances, fraud, or undue influence, such as is required for setting aside instruments of the character involved.

2. CONTRACTS: consideration: sufficiency.

Without further elaboration, it is our conclusion, after a careful perusal of the record, that the decree of the court below responds to the proof, and must be—*Affirmed.*

. ARTHUR, C. J., and DE GRAFF and VERMILION, JJ., concur.